Filed 10/6/25 (see concurring opinions)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD QUNTAN GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B330884<br>(Super. Ct. No. 22F-00739)<br>(San Luis Obispo County) |

In *People v. Uriostegui* (2024) 101 Cal.App.5th 271 (*Uriostegui*), I dissented from the majority opinion that reversed the trial court on the theory that a juror who had been dismissed required reversal because of a violation of Civil Code of Procedure section 231.7.[1]

The new majority of this court decides that the rationale expressed in the dissent in *Uriostegui* applies here. In short, the trial judge need not repeat verbatim a phrase from the statute to satisfy its requirements. Our opinion presents a

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

dilemma: two opinions in the same division of the Court of Appeal with similar facts reaching opposite holdings. Query, will our Supreme Court resolve the conflict? Do the concurring opinions here make that unnecessary?

Richard Quntan Garcia appeals his conviction, by jury, of attempted second degree robbery (Pen. Code, §§ 664/211, count 1); second degree robbery (*id.*, § 211, count 2); evading an officer (Veh. Code, § 2800.2, subd. (a), count 3); carjacking (Pen. Code, § 215, subd. (a), count 4); misdemeanor resisting a peace officer (*id.*, § 148, subd. (a)(1) , counts 5, 6, and 7); and misdemeanor possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a), count 8.) As to counts 1 and 2, the jury found Garcia personally used a firearm in committing the robbery and attempted robbery. (*Id.*, § 12022.53, subd. (b).) It further found that Garcia intentionally discharged a firearm during the robbery. (*Id.*, subd. (c).) The trial court sentenced Garcia as a third strike offender to a term in state prison of 118 years to life.

Garcia contends his conviction must be reversed because the trial court erred when it overruled his objection under section 231.7, to the prosecutor's exercise of a peremptory challenge. The attorney general concedes error. The attorney general's concession is based on *Uriostegui*, 101 Cal.App.5th 271. The attorney general concedes too easily. We disapprove of *Uriostegui* and conclude the trial court did not err in overruling Garcia's objection under section 231.7.

The amicus curiae brief filed by the district attorney of San Luis Obispo, like the majority here, does not agree with the attorney general's concession.

2

We amend the abstract of judgment to reflect the trial court's oral pronouncement on fines and fees. In all other respects, we affirm.

FACTS

*The Offenses*

On November 24, 2021, Garcia brandished a handgun at an employee of a Paso Robles Carl's Jr. restaurant, demanding money. The restaurant manager saw and heard the incident. She asked the driver of a car in the drive-through lane to call police. Garcia heard this and ran out of the restaurant without any money.

The next night, Garcia walked into the convenience store at a Paso Robles Chevron station. Matthew Schmidt was working at the store. Garcia cocked a gun, pointed it in Schmidt's direction, and yelled, "'Give me the money.'" He then fired the gun in the air. Schmidt opened the cash drawer and gave Garcia $100. As Garcia left the store, Schmidt hit the panic button and called 911. Surveillance cameras captured the robbery and showed Garcia driving away from the store in a BMW sedan.

Brenden Neary, a detective with the Paso Robles Police Department, responded to the 911 call and, about 30 minutes later, saw the black BMW about five miles away from the Chevron station. Neary initiated a traffic stop after the BMW ran a red light. The BMW did not yield and sped away at high speeds. Neary chased the car for about 15 miles. The BMW stopped at the entrance to Nacimiento Lake Drive and the driver fled on foot. Later that same day, a resident of Nacimiento Lake Drive found a .44-caliber magnum pistol by the driveway of his home. The gun was loaded with a

3

magazine and had a round in the chamber. These bullets were .44-caliber Remington magnums, the same type of bullet recovered from the convenience store.

A search of the BMW yielded cash scattered on the floorboard and clothing matching the descriptions given by Schmidt and the Carl's Jr. manager. Garcia's DNA was found on a face mask and sweatshirt found in the car. There was gunshot residue on the sleeves of the sweatshirt. Police also found mail addressed to Garcia, and several forms of identification, including a social security card and bank card, in his name. Garcia's mother was listed on the title as the owner of the car.

On November 28, 2021, a few days after the convenience store robbery, Maria Arrendondo was sitting in her parked car outside her mother's house, waiting for her mother and sister. A man walked up to her car, opened the door and told her twice to get out. She got out of the car and ran away. Arrendondo's sister, Gabriela Avalos, was sitting in her car with her mother and brother and happened to be parked in the same parking lot as Arrendondo. Arredondo found Avalos in her car. As the assailant drove off in Arrendondo's car, Avalos followed him. Meanwhile, Arrendondo called 911. Arrendondo's car was found later that same night, a couple of miles away from her mother's house. The car was not damaged, and nothing had been stolen from it. Avalos saw the man who drove away with Arrendondo's car and recognized him as matching the photo of a robbery suspect she had seen on Facebook. She identified Garcia at trial as the assailant.

Arrendondo called 911 again the next morning because her mother saw a man walking by her apartment complex who

4

looked like the carjacker. Richard Flores lives in the same apartment complex as Arredondo's mother and was seen with Garcia on November 22, 2021. Officers found Garcia about a half mile away. When he saw police, Garcia began running. Although Garcia tried to evade the officers, disobeying their directions to stop running, he was eventually detained. Garcia had a small amount of methamphetamine in his pocket. He was wearing shoes similar to those worn by the suspect in the convenience store robbery.

*Jury Selection*

Prospective juror No. 2250429 was part of the first group of 18 jurors questioned by the trial court and counsel. She was one of only two people of color on the jury panel, the other being a man of Asian descent. The record does not establish her ethnicity, but counsel and the trial court agreed that she appeared to be of mixed race. According to the trial court, "she could have easily been Tongan, Samoan, of mixed race, African-American and something else."

During voir dire, the trial court began by asking the entire panel if they knew any of the witnesses, attorneys, the defendant, or other prospective jurors, and whether they had served on a jury before. Prospective juror No. 2250429 did not answer any of these questions in the affirmative.

Responding to the trial court's next set of questions, prospective juror No. 2250429 stated that she lived in Atascadero with her mother, had no children, worked as a child-care assistant and had never been on a jury before. She had relatives who were arrested for DUI but was not close with them. Prospective juror no. 2250429 did not believe this would affect her as a juror. She had an aunt and a cousin who had

attended law school.  One of her uncles was a retired corrections counselor.  She believed these circumstances would not affect her ability to be fair to both parties.  While she was answering these questions, the trial court reminded the prospective juror to keep her voice up.

In response to questions from defense counsel, prospective juror No. 2250429 said she probably would not continue to have a relationship with a person she knew had lied to her.  If the lie was not harmful, she would "proceed with caution with them."  She did not think she would trust someone who lied to her five or six times.

The prosecutor did not ask prospective juror No. 2250429 any questions.  In the first round of peremptory challenges, the prosecutor excused prospective juror No. 2250429 and one other person.  He exercised only two more peremptory challenges before jury selection was complete.

Defense counsel objected that the prosecutor had "excused the sole African-American juror, sole person that appears to be of any substantial ethnicity beyond white."  The trial court decided to take up the issue the following day.  At that hearing, defense counsel clarified that the objection was based on section 231.7 rather than on *Batson-Wheeler*.[2]  The trial court stated that it did not think defense counsel had made a prima facie showing of bias in the prosecution's exercise of peremptory challenges.  Nevertheless, it asked the prosecutor to state his reasons for striking the prospective juror.

---

[2] *Batson v. Kentucky* (1986) 476 U.S. 79, and *People v. Wheeler* (1978) 22 Cal.3d 258.

6

The prosecutor stated:

"During voir dire, [prospective juror No. 2250429] indicated the following: That she was not married, that she has no children, that she lives with her mother, that she has no prior jury experience, and she works as a childcare assistant. Her initial responses were soft-spoken and difficult to hear. Additionally, [she] was questioned by defense counsel on the topic of trust and credibility. Her answers, again, seemed timid and unconfident. When questioned [by defense counsel] specifically about how many lies it would take for her to not trust someone, she did not ask seemingly logical follow-up questions about the nature of the lies or the context and instead provided numerical answers without explanation. When responding, she remained soft-spoken and appeared timid. At one point, the judge requested that she speak up so that all parties could hear her responses. She did not directly follow these instructions and her answers continued to be soft-spoken and difficult to hear. [¶] Based on the serious nature of the charges and potential life exposure in this case, the People are looking for jurors who have significant life experience and confidence to sit on this jury and maintain their views during intense deliberations. The combination of [prospective juror No. 2250429]'s lack of life experience demonstrated by her not being married, having no children, her living with her mom, not being

7

employed in a position of leadership, working primarily with children, and her lack of prior jury service, in combination with her soft-spoken and timid demeanor, cause the People concern about her ability to be an impartial juror."

The trial court overruled the objection, finding no "wrongful conduct" in the prosecutor's exercise of peremptory challenges. The court remained "not satisfied that there's a prima facie case. And I say that because there was simply not enough voir dire and enough peremptory challenges for me to believe that that's the case . . . ."

The trial court also expressed its partial agreement with the prosecutor's reasoning:

"This was clearly one of the youngest jurors on the panel. She clearly lacked confidence. You know, I don't know that her not having children or marriage status has any meaning to this Court, but in the context of a person her age still living at home and having a hard time keeping her voice up -- and I will make that finding for the record. She was -- amongst the jurors, I did have to ask a couple of jurors to keep . . . their voices up. Nobody like [prospective juror no. 2250429]. [Prospective juror No. 2250429] deliberately trailed off to nothing, where you couldn't hear what she was saying; she was looking down. And so I just think that those are valid reasons, even if there were a prima facie case, to not have a person on the jury and deliberating with the other people. I think a number of the DA's explanations are not

8

necessarily that compelling and, frankly, I will find that I didn't see anything that gave this Court reason to believe that she would be biased. I couldn't make that finding. But I can certainly make the finding that I think she was not -- did not have the life experience and I think -- I think courts have found that to be a justifiable reason . . . . [S]he was clearly very timid. And I think that's a legitimate reason to not have that and trust that person to deliberate about the issues in this case."

The trial court also noted that there were no other people of color on the jury, except that the person who replaced [prospective juror No. 2250429] appeared to be of Asian ethnicity. "[I]t's significant to me that I can't draw conclusions not only about [prospective juror No. 2250429], but about -- I can't draw inferences about what the People's intent was when there are 18 peremptory challenges remaining. And there's nothing that would suggest any other pattern of, you know, wrongful conduct. So I'm . . . overruling the objection."

The next day, the trial court revisited the issue, noting that it was not sure it had properly applied section 231.7. It then noted that it did not believe Garcia and [prospective juror No. 2250429] were from the same ethnic group. Additionally, the witnesses, police officers and counsel were "of multiple races and ethnicities." The court didn't "believe that the case has racial group overtones." In addition, the trial court found no "evidence of a disproportional number of peremptory challenges used against the Cognizable Group." The use of challenges did not appear to be gender based, because the

9

prosecutor used his only other peremptory challenge to excuse a man. In addition, the court "didn't hear anything unusual about the questioning of the perspective jurors that would cause me to believe that there was a bias at work. . . . No statements by [the prosecutor] that there was any purposeful discrimination. No reason to draw that inference from anything [the prosecutor] said."

## DISCUSSION

### *Section 231.7*

Garcia contends the trial court erred in denying his section 231.7 objection to the peremptory challenge of prospective juror No. 2250429.

Section 231.7, subdivision (a) provides: "A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." The statute creates a complex statutory scheme to ensure parties do not violate this prohibition.

Once a party objects to the use of a peremptory challenge as violative of section 231.7, subdivision (a), the party exercising the challenge must state its reasons for doing so. (§ 231.7, subds. (b), (c).) The court evaluates those reasons "in light of the totality of the circumstances," without speculating on or assuming the existence of other possible justifications. (*Id.*, subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view [actual or perceived cognizable group membership] as a factor in the use of the peremptory challenge, then the

10

objection shall be sustained. The court need not find purposeful discrimination to sustain the objection." (*Ibid.*)

Section 231.7, subdivision (d)(3) provides a list of circumstances the court may consider in evaluating the reasons given to justify a peremptory challenge. These include whether the objecting party is a member of the same perceived cognizable group as the challenged juror, as well as whether the alleged victim or witnesses are not members of that group. (§ 231.7, subd. (d)(3)(A)(i)-(iii).) Trial courts are to consider "whether the party exercising the peremptory challenge failed to question the prospective juror about the concerns later stated by the party as the reason for the peremptory challenge" (*id.*, subd. (d)(3)(C)(i)), and "[w]hether the party exercising the peremptory challenge engaged in cursory questioning of the challenged potential juror" (*id.*, subd. (d)(3)(C)(ii))

Section 231.7, subdivisions (e) and (g) provide two separate lists of presumptively invalid reasons for exercising a peremptory challenge. "Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption." (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 793.)

Section 231.7, subdivision (g)(1) identifies the following reasons for peremptory challenges as having been "historically . . . associated with improper discrimination in jury selection:

(A) The prospective juror was inattentive, or staring or failing to make eye contact.

(B) The prospective juror exhibited either a lack of rapport or problematic attitude, body language, or demeanor.

11

(C) The prospective juror provided unintelligent or confused answers."

Procedurally, section 231.7, subdivision (g)(2) provides that these reasons "are presumptively invalid unless the trial court is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party. Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried."

We review the overall denial of a section 231.7 objection de novo and the trial court's express factual findings for substantial evidence. (§ 231.7, subd. (j).) The statute precludes us from imputing any findings to the trial court. (*Ibid*.) Likewise, we are permitted to consider only the reasons stated under section 231.7, subdivision (c) – that is, the party's actual justification for the challenge. We may not speculate about or consider other possible reasons for the challenge. (*Ibid*.) If we determine the objection was improperly denied, the error "shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Id.*, subd. (j).)

## *Analysis*

### *I. Jury Selection*

The prosecutor gave as reasons for his peremptory challenge of the juror, that she lacks life experience and is very timid. The prosecutor explained why his reasons for the challenge matter to the case to be tried: "Based on the serious nature of the charges and potential life exposure in this case, the People are looking for jurors who have significant life

12

experience and confidence to sit on this jury and maintain their views during intense deliberations."

The lack of life experience is not listed in section 231.7 as a presumptively invalid reason for a peremptory challenge. (See *People v. Hamilton* (2009) 45 Cal.4th 863, 907 [lack of life experience is a nondiscriminatory and legitimate reason to disqualify a juror].) Garcia argues, however, that the reason lacks supporting evidence. The evidence is that the juror is young, lives with her mother, and is very timid. That is sufficient to support the conclusion that the juror lacks life experience. Timid young people who live with their mothers seldom have the varied life experiences that would be valuable in a jury sitting on a life-term case.

The other reason for the juror challenge given by the prosecutor – that the juror is very timid – comes within the presumably invalid reason that the prospective juror exhibited a problematic demeanor. (§ 231.7, subd. (g)(1)(B).) But the trial court confirmed that the behavior occurred based on its own observation, and the prosecutor explained why it mattered to the case. (*Id.*, at subd. (g)(2).) Thus, the presumption of invalidity was rebutted. (*Ibid.*)

Garcia's reliance on *Uriostegui*, *supra*, 101 Cal.App.5th 271 is misplaced. For the reasons stated in the dissent thereto, we disapprove of it. (*Id.* at pp. 282-284 (dis. opn. of Gilbert, P.J.).) The prosecutor and trial court complied with section 231.7. The prosecutor's peremptory challenge to the potential juror was proper. And we note, as we did in *Uriostegui*, that the People, as well as the defendant, are entitled to a fair trial.

13

*II. Denial of Motion to Sever*

Garcia contends the trial court abused its discretion in denying his motion to sever the counts relating to the carjacking from the other counts.

In his pretrial motion to sever, Garcia argued that the counts related to the attempted robbery and robbery were factually unrelated to the carjacking. Garcia claimed there was no overlapping evidence and a great risk of prejudice. He argued that there was a risk Avalos's questionable identification of him as the robber. Garcia also argued that inconsistencies in each witnesses' testimony will be outweighed by the corroborative effect.

The prosecution responded that all the cases are strong, and the eyewitnesses are very credible. The prosecution also said the evidence is cross-admissible in that the robberies created a motive for Garcia to flee, and the flight ultimately led to the carjacking.

In denying the motion to sever, the trial court found the cases are connected in both the type of crime, and temporally, they were committed within days. The court also agreed with the prosecutor that the evidence was cross-admissible, and that there did not appear to be significant differences in the strength of the cases.

Because it ordinarily promotes efficiency, joinder is preferred, but the trial court has discretion to sever properly found joined charges in the interest of justice and for good cause. (*People v. Westerfield* (2019) 6 Cal.5th 632, 689.) In exercising its discretion, the court must balance the potential prejudice of joinder against the state's strong interest in efficiency. (*Ibid.*)

14

Garcia cites no authority that severance is required because in his estimate, the evidence on some counts is weaker than on others. If that were the criteria, few counts would ever be joined. Garcia's stated fear of cross-contamination between counts is overrated. Juries frequently find a defendant guilty on some counts and not on others.

Here attempted robbery, robbery, and carjacking are similar types of crimes. (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1075 [robbery and vehicle taking fall within the same class].) In addition, they were all committed within a few days of each other, leading to the conclusion that they were all part of the same crime spree.

Finally, the evidence is cross-admissible. The attempted robbery and robbery are the motive for fleeing from the police. The flight from the police led Garcia to abandon the car. Abandoning the car was the motive for the carjacking. Garcia argues that severing the counts could result in a sanitized version of the carjacking count. Garcia provides no authority that he is entitled to a sanitized version of the evidence.

The trial court did not abuse its discretion.

*III. Oral Pronouncement of Judgment*

Garcia contends the abstract of judgment must be corrected to reflect the oral pronouncement of judgment.

The abstract of judgment shows a restitution fine (§ 1202.4), a parole revocation fine (§ 1202.45), a court security fee (§ 1465.8) and a criminal conviction assessment (Gov. Code, § 70373). In its oral pronouncement of judgment, the trial court stayed the restitution and parole revocation fines and waived the court security fee and the criminal conviction assessment. When the abstract of judgment and the oral

15

pronouncement conflict, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)

DISPOSITION

The abstract of judgment is amended to reflect that the restitution and parole revocation fines are stayed, and the court security fee and the criminal conviction assessment are waived. The superior court clerk is directed to forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

I concur:

YEGAN, J.

16

YEGAN, J., Concurring:

I fully concur in the typically well-written opinion of Presiding Justice Gilbert. I only write separately because amicus curiae, the District Attorney of San Luis Obispo County, contends, inter alia, that any error does not result in a miscarriage of justice. Amicus curiae is correct. In addition, insofar as Code of Civil Procedure section 231.7 says that an error pursuant to this section "shall be deemed prejudicial," it is unconstitutional. Why? The Legislature has neither the right, nor the power, to amend the California Constitution by statute. (*People v. SanMiguel* (2024) 105 Cal.App.5th 880, 891-893, 889 (conc. opn. by Yegan, J.), rev. granted, Dec. 18, 2024, S287786.)

<u>CERTIFIED FOR PUBLICATION.</u>


YEGAN, J.

CODY, J., Concurring:

I concur in the judgment because I agree the prosecutor's peremptory challenge did not violate Code of Civil Procedure[1] section 231.7.  I write separately because I believe *People v. Uriostegui* (2024) 101 Cal.App.5th 271 (*Uriostegui*) is distinguishable and should not be disapproved.[2]

To justify the peremptory challenge, the prosecutor in this case offered two overarching reasons—the prospective juror's lack of life experience and her timid, soft-spoken demeanor.  (§ 231.7, subd. (c).)

The *Uriostegui* prosecutor also cited the juror's lack of life experience.  (*Uriostegui*, *supra*, 101 Cal.App.5th at p. 276.)  In that case, the juror's unemployment factored into the lack of life experience.  (*Id*. at pp. 279-280.)  Under section 231.7, subd. (e)(11), lack of employment or underemployment is a presumptively invalid reason.  To overcome that presumption, the party exercising the peremptory challenge must make a particular showing, and the trial court must make corresponding findings.  (§ 231.7, subds. (e), (f).)  In *Uriostegui*, neither the prosecutor nor the trial court fully complied with these requirements, literally or otherwise.  (*Uriostegui*, at p. 280.)

Here, by contrast, the prosecutor did not reference any presumptively invalid reason in describing the prospective juror's lack of life experience.  Instead, the prosecutor provided

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] I fully join the majority's treatment of the motion to sever and amendment to the abstract of judgment.

facially neutral reasons like the juror's lack of children and the fact that she lived with her mother.  The absence of a presumptively invalid reason under section 231.7, subdivision (e) obviated the need for a prosecutorial showing (*id.*, subd. (e)) or a corresponding judicial finding (*id.*, subd. (f)).

The prosecutor both in this case and in *Uriostegui* cited the juror's timid, soft-spoken demeanor.  (*Uriostegui*, *supra*, 101 Cal.App.5th at p. 280.)  As the majority recognizes, this demeanor-based reason is presumptively invalid under section 231.7, subdivision (g)(1)(B).  (Maj. opn. ante, at p. 13.)  To rebut this presumption of invalidity, the trial court must confirm the demeanor, and counsel must explain why it matters to the case.  (§ 231.7, subd. (g)(2); see also *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 890-891.)  In *Uriostegui*, the trial court did not confirm the demeanor.  (*Uriostegui*, at p. 280.)  This failure to confirm required the presumption of invalidity to be treated "*as conclusive.*"  (*Caparrotta*, at p. 891, italics in original.)

Here, the trial court did confirm the demeanor.  Moreover, the prosecutor explained the demeanor's relevance to the case.  Given the "serious nature of the charges" and the "potential life exposure," the prosecutor sought jurors with the confidence to "maintain their views during intense deliberations."  "Thus, the presumption of invalidity was rebutted."  (Maj. opn. ante, at p. 13.)

In sum, while appellant's case and *Uriostegui* superficially resemble each other, the two fundamentally differ because *Uriostegui* involved presumptions of invalidity that were never rebutted.  In appellant's case, the sole presumption

2

of invalidity—concerning the juror's timid, soft-spoken demeanor—was rebutted in compliance with section 231.7.

Although *Uriostegui* is distinguishable, the majority nonetheless disapproves of it for the reasons stated in the *Uriostegui* dissent. (Maj. opn. ante, at p. 13.) In my view, the *Uriostegui* dissent misconstrues that case. *Uriostegui* does not require "verbatim" recitation of the statute. (*Uriostegui, supra*, 101 Cal.App.5th at p. 283 (dis. opn. of Gilbert, P.J.).) Rather, it recognizes that trial courts must make certain findings to overcome a presumption of invalidity. (*Id.* at p. 281.) Those findings need not take a particular form. But they must exist, and appellate courts cannot impute them. (§ 231.7, subd. (j).) A trial court's general awareness of the statute and implicit bias is insufficient. (*Uriostegui*, at p. 283 (dis. opn. of Gilbert, P.J.).)

Comparison of appellant's case and *Uriostegui* illustrates the point. In appellant's case, the trial court did not confirm the juror's timid demeanor by robotically intoning: "I am able to confirm that the asserted demeanor occurred, based on my own observations or the observations of counsel for the objecting party." The court simply relayed its observations and conclusions in plain English without referencing section 231.7, subdivision (g) or even using the word "confirm." I agree with the majority that the court's confirmation satisfies the statute. The absence of confirmation in *Uriostegui* did not.

The *Uriostegui* dissent questions "how this statute succeeds in what it seeks to prevent." (*Uriostegui, supra*, 101 Cal.App.5th at p. 283 (dis. opn. of Gilbert, P.J.).) The public and the Legislature may ultimately deem this statute a

3

success, a failure, or a mixture of both.  As a court, we are not tasked with adjudicating its efficacy.

The only presumption of invalidity in this case was properly rebutted.  The remaining question is whether, in light of the totality of the circumstances, "there is a substantial likelihood that an objectively reasonable person would view" cognizable group membership "as a factor" in the peremptory challenge.  (§ 231.7, subd. (d)(1).)  I believe the answer is no.  Given the serious charges in this case, the prosecutor could rationally avoid a timid juror who lacked life experience.

The peremptory challenge did not violate section 231.7.  *Uriostegui* is distinguishable, and I respectfully disagree with the majority's disapproval of that case.

<u>CERTIFIED FOR PUBLICATION</u>

CODY, J.

4

Timothy Covello, Judge

Superior Court County of San Luis Obispo

_____

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

Dan Dow, District Attorney of San Luis Obispo as Amicus Curiae upon the request of the Court of Appeal.